UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MICHELLE YANCY                                         CIVIL ACTION

VERSUS                                                 NO. 10-983

U.S. AIRWAYS, INC.                                     SECTION "F"

ORDER & REASONS

Before the Court is the defendant U.S. Airway, Inc.'s motion for summary judgment.  For the following reasons, the motion is GRANTED.

**Background**

This case arises out of Michelle Yancy's employment with U.S. Airways.  After working for the airline for approximately seven years, Yancy took on a position as customer service agent at New Orleans International Airport in August 2008.  Yancy assisted customers at the ticket counter, curbside, in baggage claim, and with boarding.  She, like her employer's other customer service agents, is a member of the union that represents U.S. Airways' passenger service employees, the Communication Workers of America.

During her new position she encountered conflicts with her co-workers and supervisors, eventually leading to this lawsuit against U.S. Airways.  Yancy alleges claims for retaliation under Title VII, § 1981, and the state whistleblower statute, as well as intentional infliction of emotional distress.

I.

***Mean-Spirited Facebook Post Results in First EEOC Charge***

In June 2009, Yancy complained to Kim Sharpe, a U.S. Airways Human Resources manager, that a customer service supervisor, Michael Macaluso, posted a photograph of her on his Facebook page. The photo showed Yancy hunched over her desk with her underwear visible.  She appeared to be sleeping.  Yancy explains that the photo showcased at least part of her buttocks and the meager lines of her thong underwear; she further explains that she was crouched over the desk from the pain of yet-to-be-discovered gall bladder problems.  The photograph may have been on Facebook as early as October 2008, but Yancy did not notify Human Resources until after she discovered the photo eight months later.  The parties agree that U.S. Airways' investigation immediately followed Yancy's complaint.  They also agree that the investigation was thorough.

The inquiry resulted in the discipline of three employees: Macaluso, along with Christian Novak, a shift manager, and Gregory Oden, another customer service agent.  Although Sharpe may have recommended that these employees be terminated or suspended, they all received some alternative, possibly lesser, form of discipline. Dissatisfied that U.S. Airways did not fire Macaluso, Yancy filed a charge of discrimination with the EEOC at the end of June 2009, alleging that she was subject to sexual harassment based on the Facebook photograph.  Yancy then left on medical leave from July 1,

2009 to September 12, 2009.  She contends that Novak called her five or six times, pressuring her to return.

## II.

### *A Lewd Text Message Leads to Plaintiff's Second EEOC Charge*

While Yancy was on medical leave, U.S. Airways began to deal with potential sexual harassment issues at the New Orleans airport and required its employees to participate in training sessions. Yancy was scheduled to attend a training on September 25, two weeks after her return from leave.  When Yancy switched shifts with a co-worker on this date, her supervisors called her to confirm her attendance.

Around this time, the same Mr. Oden reported to Human Resources that Yancy had sent him a lewd text message several months before.  Disturbingly, the text message contained a picture of a penis tattooed to look like a snake.  As it did regarding Yancy's complaint, U.S. Airways promptly investigated Oden's complaint.[1]  On the day of her scheduled training, Yancy was called into a meeting with Sharpe about the lewd text message.  Surprised, Yancy denied having sent the message but conceded that the phone number listed on the text was formerly hers.  The parties agree that the meeting was heated and contentious; Sharpe felt Yancy to be uncooperative and belligerent.

---

[1] Yancy, in the same breath, disputes and affirms that U.S. Airways investigated the complaint against her.  It is clear from the facts she alleges that some sort of investigation took place.

While U.S. Airways investigated the lewd message, it placed Yancy on a temporary paid suspension.  In October 2009, Yancy filed a second charge of discrimination with the EEOC, contending that the investigation prompted by the lewd text to Oden and her suspension amounted to sex and race discrimination, as well as retaliation for her first complaint to the EEOC.

### III.

***Plaintiff's Furlough Produces a Third Charge Before the EEOC***

U.S. Airways selected Yancy for furlough in either 2009 or 2010.  According to U.S. Airways, it conducted a company-wide "reduction in force" of nearly 1,000 employees in February 2010 due to its reduction in flight schedules and routes and other changes. 600 reductions were to customer service and rap service positions. U.S. Airways maintains that it followed the administrative requirements outlined in the collective bargaining agreement between it and the union, in determining which customer service agents to discharge.  Applying objective criteria outlined in the agreement, U.S. Airways claims that it selected Yancy and one other employee at the New Orleans airport for furlough based on their junior status; indeed, they were the two least senior customer service agents.

Yancy asserts that she was selected for furlough at the close of the investigation about her involvement in sending the lewd message.  Yancy admits that she was given the option to apply to

4

another position within U.S. Airways but that she was only interested in remaining in New Orleans. Despite emphasizing her interest in remaining a customer service agent in New Orleans, a position for which was listed as an option, she was not granted an interview.

Yancy's furlough began in mid-February 2010. About two weeks later, Yancy filed a third EEOC charge, alleging that U.S. Airways selected her for furlough as retaliation for filing the first two EEOC charges. But U.S. Airways called Yancy back to work on a part-time basis in May 2010. Yancy resigned from employment five months later, in October 2010.

IV.

### *Yancy Sues U.S. Airways*

In March 2010, while her third EEOC charge was still pending,[2] Yancy sued her employer, alleging claims for retaliation under Title VII, § 1981, and Louisiana's whistleblower statute; tortious interference with an employment contract; and intentional infliction of emotional distress. She seeks compensatory damages for her federal claims, declaratory judgment on her whistleblower claim, general, special, and punitive damages under Louisiana law, as well as statutory penalties, attorney's fees, and statutory interest.

---

[2] It appears that Yancy's third EEOC charge remains pending. Her first two charges were unsuccessful.

In August 2010, Judge Zainey granted the defendant's motion to dismiss in part, dismissing only plaintiff's claim of tortious interference with contract.[3] Her lawsuit now before this Court, U.S. Airways moves for summary judgment on plaintiff's remaining claims.

## **Law & Analysis**

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential

---

[3] For some reason, he has since recused himself.

element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). He instead must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

                                II.

U.S. Airways first challenges the plaintiff's claims of retaliation under Title VII, § 1981, and the Louisiana whistleblower statute. The standard of proof for Title VII claims also applies to § 1981 claims, Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 403 n. 2 (5th Cir. 1999), and claims under Louisiana's whistleblower statute. Smith v. AT&T Solutions, Inc., 90 F. App'x 718, 723 (5th Cir. 1994). These retaliation claims are governed either by the McDonnell Douglas burden-shifting framework or the mixed-motive framework in Price Waterhouse Coopers. Smith v. Xerox Corp., 602 F.3d 320 (5th Cir. 2010). Plaintiff's complaint and briefing on summary judgment suggests that the

burden-shifting framework is appropriate; she argues that her employer retaliated against her for her EEOC activities and repeatedly rejects any lawful justification for its actions.[4] See generally id.

### A.

Under the McDonnell Douglas burden-shifting framework, Yancy must first show to a prima facie case of retaliation. To do so, she must establish that: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007). It is not seriously disputed that the plaintiff engaged in a protected activity by filing three charges with the EEOC.

An adverse employment action is one that might dissuade a reasonable worker from making a discrimination claim; thus the plaintiff must show that "a reasonable employee would have found the challenged action materially adverse." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 67 (2006). Yancy contends that the airline retaliated against her first EEOC charge by suspending her

---

[4] Regardless, her claim would also fail under the mixed-motive framework. Aside from not establishing a prima facie case of retaliation, the plaintiff does not show that her EEOC charge was a motivating factor in either her suspension or furlough. See Smith v. Xerox Corp., 602 F.3d 320, 326 (5th Cir. 2004).

8

while it investigated her involvement in sending a vulgar text message.[5] Ignoring any effect of her own misdeeds on her suspension, this action could be viewed as materially adverse, at least for the purposes of summary judgment: Yancy's paycheck lagged during her suspension, and it was unclear for almost two weeks whether she would be paid at all; she likely faced uncertainty with regard to her future employment.[6] But see Watts v. Kroger Co., 170 F.3d 505, 512 (5th Cir. 1999) ("[E]mployment actions are not adverse where pay, benefits, and level of responsibility remain the same."). At best, whether Yancy indeed suffered an adverse employment action remains unpersuasive on this record.

To establish a causal connection between this potentially adverse action and her second EEOC complaint, Yancy emphasizes the

---

[5] Yancy does not contest her employer's argument that it did not retaliate against her for her second EEOC charge by selecting her for furlough.

[6] Yancy also draws attention to more generalized negative treatment at work. Although it is unclear, it seems that she felt like her employer exercised less patience with her than she felt she was owed. The Court cautions that "[t]he antiretaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms. It does so by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." Burlington, 548 U.S. at 68 (internal citations omitted). Indeed, the plaintiff apparently did not feel any deterrence pressures; she filed successive EEOC charges with each passing year.

temporal link between the two.  But with respect to her suspension, the U.S. Court of Appeals for the Fifth Circuit has held that "'the mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case.'"  Roberson v. Alltell Info. Servs., 373 F.3d 647, 655 (5th Cir. 2004) (quoting Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 n.3 (5th Cir. 1997).  Temporal proximity alone is not enough.  See id.  Nothing in the record establishes that Sharpe's decisions to investigate the complaint against Yancy or to suspend her were influenced by any improper motive.  The causal link is tenuous at best.  The Court is not persuaded that the plaintiff has established a prima facie case of retaliation.  But in any event, Yancy's retaliation claims fall short on the final steps of the burden-shifting framework.

B.

Under the next step of the burden-shifting framework, U.S. Airways must carry its burden by articulating a legitimate, non-discriminatory reason for the employment action.  492 F.3d at 557.  The burden then returns to Yancy to establish that her employer's stated reason is pretext for the real (retaliatory) purpose.  Id.  The Fifth Circuit has "consistently held that in retaliation cases where the defendant has proffered a nondiscriminatory purpose for the adverse employment action the plaintiff has the burden of proving that 'but for' the

10

discriminatory purpose [s]he would not have been [suspended]." Pineda v. United Parcel Serv., Inc., 360 F.3d 483 (5th Cir. 2004).

U.S. Airways has articulated non-discriminatory reasons for temporarily suspending the plaintiff. U.S. Airways initiated the lewd text investigation after the complaint of Oden. That Oden may have harbored some animus toward Yancy does not discount that all facts available to U.S. Airways at the time it was notified of the text message, from a cell number that was hers, pointed toward Yancy's culpability; or that U.S. Airways, acting within the bounds of its sexual harassment policy, suspended her for a brief period of time to investigate the Oden complaint. U.S. Airways' decision to suspend, rather than merely discipline, seems supported by Sharpe's belief that Yancy was uncooperative and belligerent. U.S. Airways has met its intermediate burden.

With the burden returned to Yancy, her claims of pretext fall short of their target. She is unable to show that but for her EEOC charges the conceivably adverse employment action here would not have otherwise taken place. Title VII, which in part protects employees from retaliatory conduct for ultimate adverse employment action by employers, "was not intended to immunize insubordinate [or] disruptive . . . behavior at work." Smith v. Tex. Dep't of Water Res., 818 F.2d 363, 366 (5th Cir. 1987). Accordingly, U.S. Airways was not rendered powerless to suspend Yancy for what the company reasonably believed to be bad behavior that violated the

company's sexual harassment policy.  Plaintiff has not convincingly shown that her suspension would not have occurred in the absence of her first EEOC charge.[7]

### III.

Next, U.S. Airways challenges the plaintiff's claim of intentional infliction of emotional distress.  Under Louisiana law

> to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

Baker v. FedEx Ground Package Sys., Inc., 278 F. App'x 322, 329 (5th Cir. 2008) (quoting with approval White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991)).

On summary judgment, U.S. Airways focuses on the first of these elements and asserts that Yancy cannot support this claim because she has failed to introduce any evidence to establish that U.S. Airways acted in an "extreme and outrageous" fashion.

Without pointing to any case precedent, Yancy simply asserts

---

[7] Yancy attempts to argue that her co-worker reported the text message several months after she allegedly sent it only to quell the effect of her complaints regarding her Facebook photo. However, nothing in Yancy's briefing indicates it was her *employer's* intention to stifle her protected activities. Instead, everything in the briefing suggests that U.S. Airways followed protocol in suspending her.

that she suffered anxiety and depression as a result of her treatment at work after making her report of sexual discrimination. She felt rejected by her co-workers and abandoned by her superiors. Her doctor has recommended she continue treatment for her anxiety and depression for three years.

However lamentable the circumstances of Yancy's depression and anxiety, her failure to dispute her employer's arguments that its actions were not extreme and outrageous merely highlight to this Court that this claim lacks lawful foundation.

Having found that the plaintiff can sustain neither her retaliation claims nor her claim of intentional infliction of emotional distress, the Court GRANTS the defendant's motion for summary judgment.  SO ORDERED.

IT IS FURTHER ORDERED:  The plaintiff's case is DISMISSED with prejudice.

New Orleans, Louisiana, July 20, 2011.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE