IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
April 4, 2012

Lyle W. Cayce
Clerk

No. 11-30799
Summary Calendar

MICHELE YANCY,

              Plaintiff - Appellant

v.

US AIRWAYS, INC.,

              Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:10-CV-983

Before BENAVIDES, STEWART, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

  Before the Court is Plaintiff-Appellant Michelle Yancy's ("Yancy") appeal of the district court's grant of summary judgment on her unlawful retaliation claims against her former employer, Defendant-Appellee U.S. Airways, Inc. ("U.S. Airways"). We AFFIRM.

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

## Factual and Procedural Background

During the relevant time period, Yancy was employed by U.S. Airways as a Customer Service Agent in the New Orleans Airport. In May 2009, Yancy learned from a supervisor, Valkeisha Polk ("Polk"), that another coworker, Michael Macaluso ("Macaluso"), had posted a photograph of her on his Facebook page. The picture depicted Yancy leaning over a table while at work, revealing a portion of Yancy's underwear.

On June 2, 2009, Yancy complained about the photo to U.S. Airways's Human Resources Manager, Kimberly Sharpe ("Sharpe"). Shortly thereafter, Sharpe conducted an investigation of the incident and found three employees, including Macaluso and Greg Oden ("Oden"), responsible. The three employees were disciplined, although none was terminated or suspended. Dissatisfied with the result, Yancy filed a charge of discrimination with the EEOC at the end of June 2009, alleging that she had been subjected to sexual harassment.

On July 1, 2009, Yancy sustained a non-work related injury, requiring her to take medical leave until September 12, 2009. According to Yancy, on August 5, 2009, she received a call from Polk, who, in addition to being her supervisor, was also Yancy's union representative for Yancy's union; Polk informed Yancy that Polk had spoken with Janice Garris ("Garris), the union president, and that Garris had told Polk to convince Yancy to drop her charges because fingers were being pointed, Yancy wasn't "squeaky clean" herself, and, if investigations continued, a lot of people would be fired. Thereafter, on August 10, 2009, Yancy spoke with Garris, and Garris confirmed Oden had threatened to reveal that Yancy had sent a sexually explicit photo to his cell phone. Sometime thereafter, Oden reported the photo, which depicted a tattooed penis and was accompanied by sexually explicit text, to U.S. Airways's Human Resources. The photo and text appeared to have been sent from Yancy's cell phone on April 24, 2009.

When Yancy returned from medical leave, she learned that she had been scheduled for a training session on September 25, 2009. On that day, Yancy met with Sharpe, who was visiting from Arizona, and Bryan Smith, her superior. Yancy's attorney and Polk, as Yancy's union representative, also attended the meeting. Either just prior to or at the beginning of the meeting, Sharpe informed Yancy that Macaluso intended to apologize for taking the photo of her and posting it to Facebook. Yancy, however, refused to discuss Macaluso's apology. Thereafter, Sharpe confronted Yancy with the photo Oden alleged that she had sent to him. Yancy denied sending the photo, although she admitted the photo was sent from a former number of hers. According to Sharpe, Yancy was uncooperative and belligerent in the meeting. Yancy denies being uncooperative and belligerent, and, instead, states Sharpe accused her of belligerence because Yancy would not admit to sending the photo. Yancy admits, however, that the meeting was "very heated."

Sharpe left the meeting to confer with her supervisor, and, on returning to the meeting, informed Yancy that she was being suspended pending a conclusion of the investigation into the photo. According to Yancy, Sharpe explained that she was being suspended due to her belligerent, insubordinate, and uncooperative behavior. The suspension lasted twelve days, and Yancy was paid after the suspension ended. On October 15, 2009, Yancy filed a second charge with the EEOC, alleging that the investigation into the lewd photo amounted to sex and race discrimination, and was done in retaliation for her first complaint with the EEOC.

Around that time, the U.S. Airways CEO notified the company's employees that the company could be conducting a company-wide reduction in force. The reduction would be conducted according to the union's Collective Bargaining Agreement. Pursuant to the Agreement, reductions were to be based on employees' "Passenger Service Seniority," effectively an employee's length of

service with the company. Karen Cunningham, a Senior Analyst with U.S. Airways, selected Yancy and another employee at New Orleans Airport for furlough, as they had they had the least seniority at that location.[1] Consequently, on February 14, 2010, Yancy was furloughed. On March 3, 2010, Yancy submitted a third charge to the EEOC, alleging that her furlough was in retaliation for her previous EEOC charges.[2]

On March 26, 2010, Yancy filed the instant action in United States district court. Yancy alleged unlawful retaliation in violation of Title VII, 42 U.S.C. § 1981, and Louisiana's anti-discrimination and whistleblower statutes, as well as tortious interference with an employment contract and intentional infliction of emotional distress. On August 18, 2010, the district court, on U.S. Airways's motion, dismissed Yancy's claim for tortious interference, but allowed the other claims to proceed. Thereafter, on July 20, 2011, the district court granted U.S. Airways's motion for summary judgment on all of Yancy's claims. This timely appeal followed.

## STANDARD OF REVIEW

"We review a grant of summary judgment *de novo*, applying the same legal standard as the district court." *Croft v. Governor of Tex.*, 562 F.3d 735, 742 (5th Cir. 2009) (internal quotation marks omitted). Summary judgment should be rendered if the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

---

[1] Yancy disputes whether any other employee at New Orleans Airport was selected for furlough, relying on Polk's declaration that other union officials told Polk that New Orleans was not part of the reduction in force. As Polk does not aver to any first-hand knowledge of the furlough decision, however, her statement about what other union officials told her is inadmissible hearsay, and thus fails to create a genuine dispute with Cunningham's declaration. *See Garcia v. Reeves Cnty., Tex.*, 32 F.3d 200, 204 (5th Cir. 1994) (finding inadmissible hearsay insufficient to create material dispute to avoid summary judgment).

[2] Although Yancy returned to work, part-time, on May 27, 2010, she resigned on October 30, 2010.

4

R. CIV. P. 56(a). "An issue is material if its resolution could affect the outcome of the action." *Daniels v. Cty. of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001). "In deciding whether a fact issue has been created, the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* This Court may affirm summary judgment "on any grounds supported by the record." *Lifecare Hosps., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005).

## ANALYSIS

Yancy appeals the district court's grant of summary judgment on her retaliation claims.[3] She argues that the district court improperly evaluated her claims under the pretext-prong of Title VII's retaliation analysis, and failed to conduct a sufficient analysis under the mixed-motive prong.

To establish a claim for retaliation under Title VII,[4] the Court applies a modified *McDonnell Douglas* approach. *See Smith v. Xerox Corp.*, 602 F.3d 320, 330 (5th Cir. 2010) (holding mixed-motive analysis applies to retaliation). A plaintiff must first show a prima facie case of retaliation by establishing that: (1) she "participated in an activity protected by Title VII"; (2) her "employer took an adverse employment action against [her]"; and (3) "a causal connection exists between the protected activity and the adverse employment action." *McCoy v. Cty. of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007). "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, . . . nonretaliatory reason for its employment decision." *Id.* at 557. If the employer meets the burden of production, the plaintiff bears the ultimate

---

[3] Yancy does not raise any error in the district court's grant of summary judgment on her intentional inflection of emotional distress claim.

[4] The same analysis applies to claims under § 1981, *see Shackleford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999), and Louisiana's anti-discrimination and whistleblower statutes, *see Smith v. AT&T Solutions, Inc.*, 90 F. App'x 718, 723 (5th Cir. 2004) (per curiam).

burden of proving (1) "the employer's proffered reason is not true but instead is a pretext for the real . . . retaliatory purpose," *id.*, or (2) "that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor'" is retaliation (i.e., "mixed-motive"), *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). The plaintiff may meet this burden with circumstantial evidence. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101–02 (2003).

As noted, Yancy argues that the district court failed to sufficiently analyze her claim under the mixed motive prong, instead finding that the she had failed to show that U.S. Airways's proffered reasons for suspending and furloughing here were pretext.[5] Nonetheless, "[t]he question of pretext versus mixed-motive treatment is only reached after a plaintiff has met [her] prima facie showing under the modified *McDonnell Douglas* standard and the defendant has responded with a legitimate nondiscriminatory reason." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005). As the district court also found, however, Yancy failed to establish a prima facie case of retaliation for either the suspension or the furlough because she failed to show a causal connection between her protected activities and those actions. Accordingly, even assuming a mixed-motive analysis would be appropriate, Yancy's failure to establish a prima facie case precludes such analysis.[6]

Yancy argues that the causal connection is supported by the phone calls she received while on medical leave requesting she drop her charges, and by the fact that Sharpe discussed, during the September 25, 2009 meeting, the earlier

---

[5] The district court actually did consider and dismiss her claim under the mixed-motive prong, albeit in cursory fashion.

[6] Similarly, as the Court finds Yancy failed to establish a prima facie showing of causation, the Court does not decide whether Yancy's twelve-day suspension qualified as an adverse employment action.

Facebook photo. With regard to the phone calls, even if one could infer from them that some retaliatory motive belonged to Garris or Polk, the individual who suspended Yancy, Sharpe, participated in neither of the calls. In evaluating a Title VII retaliation claim, "we . . . look to who actually made the decision or caused the decision to be made . . . ." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000). Yancy identifies no evidence demonstrating either Garris or Polk were responsible for the decision to suspend her, or that either exerted any leverage over Sharpe.[7] Consequently, the phone calls fail to establish any causal connection between her protected activities and Sharpe's decision to suspend her.

Yancy's other argument is equally unavailing. The fact that Sharpe raised the issue of the Facebook photo during the September 25, 2009 meeting provides no basis to infer that she sought to retaliate against Yancy for her protected activities. Nothing in the record indicates Sharpe raised the EEOC charge or Yancy's complaint to Human Resources, or appeared to have any concern about them.

Consequently, the only remaining ground to support Yancy's prima facie showing of cause is the temporal proximity between her protected activities and her suspension. Yancy's suspension occurred almost four months after her second EEOC charge, however, and prior to her third EEOC charge. With such a delay, the temporal proximity of the events is insufficient to establish Yancy's prima facie case alone. *See Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (citing, with approval, cases finding three-and-four-month periods between protected activity and adverse employment action failed to establish prima facie case under Title VII based on temporal proximity); *Raggs v. Miss.*

---

[7] Indeed, from the record, it appears Polk objected to Yancy's suspension.

*Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002) (holding five-month lapse precluded inference of causal link from temporal proximity).

Accordingly, an inference that Sharpe decided to suspend Yancy due to her protected activities would be "tenuous," at best, and such an inference is insufficient to establish a prima facie case of retaliation. *See Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902–03 (5th Cir. 2000) (holding plaintiff must introduce more than "scintilla" of evidence to create material dispute to survive summary judgment).

Yancy's argument regarding her furlough fairs no better. The district court found that Yancy failed to contest U.S. Airways's summary judgment arguments regarding her furlough. On appeal, Yancy only points to her "Statement of Disputed Facts," in which she stated that she filed a third charge with the EEOC alleging that she was furloughed in retaliation for her earlier charges. The Statement, however, did not "assert a legal reason why summary judgment should not be granted," and, consequently, Yancy waived any argument against summary judgment on that claim. *See Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002).[8]

Accordingly, Yancy fails to identify a genuine dispute of material fact, and, thus, fails to show that the grant of summary judgment for U.S. Airways was erroneous.

## CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.

---

[8] Nonetheless, even had Yancy not waived the argument, it would still be unsuccessful. Cunningham averred that, at the time she choose Yancy for a furlough, she had no knowledge of Yancy or of her protected activities. Yancy introduces no admissible evidence to dispute that, and therefore cannot establish a causal link between her charges and the furlough. *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 n.6 (5th Cir. 2003) ("Although plaintiff's burden at the prima facie stage is not onerous, the plaintiff must produce at least some evidence that the decisionmakers had knowledge of his protected activity.").

# United States Court of Appeals
### FIFTH CIRCUIT
#### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**



TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

RECEIVED
MAY 2 4 2012
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
DEPUTY CLERK

May 23, 2012

Ms. Loretta Whyte
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

    No. 11-30799, Michele Yancy v. US Airways, Incorporated
        USDC No. 2:10-CV-983

Enclosed, for the district court only, is a copy of the judgment issued as the mandate.

Enclosed, for the district court only, is a copy of the court's opinion.

Enclosed for the district court and counsel is the approved bill of costs.

The electronic copy of the record has been recycled.

        Sincerely,

        LYLE W. CAYCE, Clerk

        By: _____
        Shawn D. Henderson, Deputy Clerk
        504-310-7668

cc: (letter only)
    Honorable Martin L.C. Feldman

cc w/encl:
    Mrs. Elizabeth Harper Emmett
    Ms. Leah Shay Freed
    Ms. Jennifer M. Medley
    Mr. Christopher J. Meister
    Mr. Mark Miller

P.S. to Judge Feldman: A copy of the opinion was sent to your office via email the day it was filed.